## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT OF THE STATE OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY CIVIL DIVISION

ROBERT BLOBNER,

     Plaintiff,

vs

ARTEMIS MARKETING CORP. d/b/a
ROOMS TO GO; ORMOND ATLANTIC
CORP.; ROOMSTOGO.COM, INC.; and
R.T.G. FURNITURE CORP.,

     Defendants.

_____/

Division:

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Robert Blobner ("**Blobner**"), individually, and on behalf of all those similarly situated, sue Defendants, Artemis Marketing Corp d/b/a Rooms To Go, Ormond Atlantic Corp., ROOMSTOGO.COM, Inc., and R.T.G. Furniture Corp. (collectively "**Defendants**" or "**Rooms To Go**"), and alleges as follows:

### JURISDICTION, PARTIES, AND VENUE

1.     This is a class action lawsuit for deceptive and unfair business practices in violation of Florida's Deceptive and Unfair Trade Practices Act, Sections 501.201 *et seq.* of the Florida Statutes ("**FDUTPA**"), as well as claims for equitable relief, breach of contract, breach of express and implied warranties, common law restitution, and injunctive relief.

2.     Plaintiff seeks to represent a class of consumers that purchased "bonded leather" furniture from Rooms To Go, which never should have been injected into the stream of commerce.

3.      This Court has subject matter jurisdiction because this is an action for damages, which, in the aggregate, exceeds $15,000.00, exclusive of interest, attorneys' fees, and costs, and for injunctive relief.

4.      This Court has personal jurisdiction over the Defendant, and due process is satisfied because Defendant has, at all times relevant to this action (a) operated, conducted, engaged in, or carried on a business venture and/or commercial activities in this State; (b) maintained offices and/or agencies in this State; (c) committed statutory and common law violations within this State related to the allegations made in this Complaint; and (d) caused injuries to Plaintiff and all other similarly situated class members that he seeks to represent, which arouse out of the actions, inactions, conduct, statements, representations, or omissions complained of herein, all of which occurred in the State of Florida.  Further, Defendant has sufficient minimum contacts with the State of Florida so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

5.      At all times relevant hereto, Plaintiff Blobner has been a resident of Hillsborough County, Florida.

6.      Defendant Artemis Marketing Corp. is an active Nevada corporation that has been authorized to transact business in Florida since 2005.  Defendant's principal place of business is 11540 US Highway 92 East, Seffner, Florida.  Defendant operates multiple stores throughout the State of Florida, including stores in Hillsborough County.

7.      Defendant Ormond Atlantic Corp. is a Florida corporation whose principal place of business is 11540 Highway 92 East, Seffner, FL.  Defendant operates multiple stores throughout the State of Florida, including stores in Hillsborough County.

8.    Defendant ROOMSTOGO.COM, Inc. is a Florida corporation whose principal place of business is 11540 Highway 92 East, Seffner, FL. Defendant operates multiple stores throughout the State of Florida, including stores in Hillsborough County.

9.    Defendant R.T.G. Furniture Corp. is a Florida corporation whose principal place of business is 11540 Highway 92 East, Seffner, FL. Defendant operates multiple stores throughout the State of Florida, including stores in Hillsborough County.

10.    Venue is proper before this Court under Chapter 47 of the Florida Statutes because, among other things, (a) Defendant's principal place of business is in Hillsborough County, Florida; (b) Defendant has agents or other representatives in Hillsborough County, Florida; and (c) Plaintiff Blobner's causes of action accrued in Hillsborough County, Florida.

11.    All conditions precedent to the maintenance of this action have either occurred, have been performed, or have been waived.

### FACTS COMMON TO ALL COUNTS

12.    Rooms To Go is a retail seller of furniture and has been doing business throughout the State of Florida for many years. Indeed, Rooms To Go's website (www.roomstogo.com) claims that the company "opened its first set of doors in 1991" and since then it has "grown into America's #1 independent furniture company" with "nearly 150 furniture stores/showrooms" and "millions of customers."

13.    At all times material, Rooms To Go represented to its Florida customers that it guarantees to the original purchaser that its furniture is free from defects in material and workmanship under normal use and conditions.

3

14.     Since approximately 2013, Rooms To Go has been marketing, offering for sale, and selling a variety of products (including couches and chairs) that are upholstered with something called "bonded leather." At all times material, Rooms To Go knew that "bonded leather" was not, and is not, genuine leather.

15.     Instead of being genuine leather, the so-called "bonded leather" sold by Rooms To Go was and is actually a synthetic, man-made leather-like substance that contains only small amounts of leather shreds, mixed with a number of additional synthetic products, such as polyurethane and poly/cotton blends, to create a faux leather-like product.   The process for making so-called "bonded leather" is often compared to the paper-making process where shredded materials are pressed into a rolled out product or particle board.

16.     While at first glance, so-called "bonded leather" appears to be genuine leather to the naked eye, it is vastly inferior to genuine leather in virtually every material way.  Indeed, "bonded leather" furniture products peel, flake, and deteriorate so rapidly and to such an extent that they are not merchantable and not fit for the ordinary purposes for which they are sold, being a substitute for genuine leather upholstered furniture.

17.     At all times material, Rooms To Go knew that while so-called "bonded leather" appeared to be genuine leather, that "bonded leather" is vastly inferior to genuine leather, and that "bonded leather" peels, flakes, and deteriorates so rapidly and to such an extent that it is not merchantable and not fit for the ordinary purposes for which the goods are used as a substitute for genuine leather upholstered furniture.

18.     Furthermore, at no time did Rooms To Go display or market the bonded leather furniture it sold in a manner to make Florida consumers and its customers aware that the

composition of the "bonded leather" was less than 17% leather fibers and 83% non-leather substances.

19.     At all times material, the so-called "bonded leather" furniture sold by Rooms To Go was not merchantable and not fit for the ordinary purposes for which the goods are used as a substitute for furniture upholstered in genuine leather.

20.     As the direct purchaser of "bonded leather" furniture from furniture manufacturers, and as the subsequent retailer of such furniture to consumers throughout Florida, Rooms To Go knew the particular purposes for which the goods were required to satisfy, namely to be:  (a) a reasonably reliable and suitable furniture product that was suited for its intended purpose as furniture, (b) a furniture product that was not inherently defective, and (c) a product that would not peel, flake, or deteriorate rapidly upon use.

21.     Rooms To Go marketed itself to Florida consumers, its customers, in a manner to portray itself as a company that uses skill and judgment to select, provide, and sell high-quality merchantable goods, which are free from defect. In fact, Rooms To Go's website exclaims that "[n]o matter which color works best for you, **know that all of the leather furniture we sell is made       from       durable,       high-quality       material.**"                 See https://www.roomstogo.com/furniture/Leather/_/N-8ci (Emphasis added).

22.     However, at all times material, Rooms To Go knew that the "bonded leather" furniture it sold to Florida consumers was peeling, flaking, and deteriorating so rapidly and to such an extent that the furniture was unmerchantable and unsuitable for sale.

23.     The "bonded leather" furniture sold by Rooms To Go to Florida consumers was, in fact, unmerchantable and not fit for the ordinary purposes for which the goods were sold and/or used at the time it was being sold by Rooms To Go.

24.     Rooms To Go's conduct in both misrepresenting the goods it was selling, and selling unmerchantable and unsuitable goods in Florida commerce was objectively deceptive and unfair to Florida consumers who purchased the "bonded leather" furniture.

25.     Rooms To Go's unfair and deceptive marketing and sales practices also allowed it to unfairly compete against other furniture retailers who sold actual genuine leather furniture and/or who honestly disclosed the true nature of the synthetic "bonded leather" furniture that they sold.

26.     Rooms To Go also engaged in deceptive and unfair conduct in connection with consumer's warranty claims.

27.     In a continuing and ongoing effort to deter Florida consumers from pursuing their legal rights, Rooms To Go, through a pattern of deceptive and unfair business practices, provided its customers who complained of defective "bonded leather" furniture with misinformation and deceptive statements, all in an effort to conceal the true nature of Rooms To Go's knowledge and deception in its statewide sale of defective so-called "bonded leather" furniture.

28.     In a further effort to deter Florida consumers from pursuing claims for their defective and unmerchantable "bonded leather," Rooms To Go acted in a deceptive and unfair manner by routinely misrepresenting to consumers that the "bonded leather" furniture was "out of warranty" and that "leather is not covered" by its warranty – all of which was intentionally designed to deter customers from enforcing their warranty rights.

29.     Rooms To Go's conduct of misrepresenting the warranty coverage for the "bonded leather" furniture it sold to Florida consumers is objectively deceptive and unfair to consumers who purchased the furniture.

## PLAINTIFF ROBERT BLOBNER

30.    On or about June 13, 2013, Plaintiff Blobner purchased two items of so-called "bonded leather" upholstered furniture (a sofa and a chaise) from a Rooms To Go retail store located at 1821 W. Brandon Blvd., Brandon, Hillsborough County, Florida.

31.    At no time prior to Plaintiff Blobner's purchase did Rooms To Go do anything to display or otherwise market the subject furniture in a way to suggest or disclose that it was not upholstered with genuine leather, that it was upholstered with defective so-called "bonded leather," that it was not suitable for use as furniture, or that it was suffering from various defects such as peeling, flaking, or rapid deterioration.

32.    Rooms To Go displayed and otherwise marketed the subject furniture in an unfair and deceptive manner which suggested it was upholstered with real leather, and that it was fit and suitable for its intended purposes and otherwise merchantable.

33.    At that time, Plaintiff Blobner signed Rooms To Go's Sales Contract, paying a total of $1,193.00. *See* Plaintiff Blobner's Sales Contract at **Exhibit A.**

34.    Remarkably, only one week later, Plaintiff Blobner's "bonded leather" furniture began to peel, flake, and deteriorate rapidly and he promptly notified Rooms To Go.

35.    Within a few weeks of being notified of the problems Plaintiff Blobner was experiencing with this furniture, Rooms To Go replaced a piece of the subject furniture initially purchased by Blobner. However, immediately upon delivery, the replacement piece of "bonded leather" furniture provided by Rooms To Go exhibited the same disastrous peeling, flaking and deterioration as the original piece of furniture purchased by Blobner.

36.     Not surprisingly, this replacement piece of "bonded leather" furniture continued to rapidly deteriorate. Even a casual inspection of Plaintiff's "bonded leather" furniture reveals its horrific peeling, flaking, and deterioration.

 

37.     It is beyond dispute that Rooms To Go's initial repair/replacement attempts were unsuccessful in correcting any of the problems associated with owning "bonded leather" furniture.

38.     Thereafter, Rooms To Go failed and refused to either properly repair or replace Plaintiff's defective furniture.

## CLASS REPRESENTATION ALLEGATIONS

39.     Plaintiffs, together with other individuals that may join this action as class representatives, bring this action as a class action on behalf of all similarly situated persons pursuant to Florida Rule of Civil Procedure 1.220. The proposed **Class** is defined as follows:

> All persons who purchased any Bonded Leather Furniture ("**Bonded Leather**") from Rooms To Go within the last five (5) years.

Excluded from the Class are: (1) Defendants and any person, firm, trust, corporation, or other entity related to or affiliated with Defendants; and (2) any such persons, named as Plaintiffs, who as of the date of any class certification order or other deadline established by the Court (a) previously asserted an identical claim against Defendant that has been fully resolved through

litigation or settlement; and/or (b) are the subject of pending litigation on an identical claim against Defendant.

40.     This action is properly maintainable as a class action.

41.     The Class is so numerous that joinder of all members individually, in one action or otherwise, is impractical. While the exact number of Class members is unknown to Plaintiff at this time, there are thousands of Florida consumers who have purchased defective "bonded leather" upholstered furniture from Defendant. The identities of the members of the Class are within the knowledge of and can be ascertained through discovery and from Defendants' records.

42.     This action poses questions of fact and law that are common to and affect the rights of all Class members. Such questions of law and fact common to the Class include but are not limited to the following:

    a.     Whether the Class members purchased "bonded leather" upholstered furniture from Defendants;

    b.     Whether the "bonded leather" upholstered furniture was defective and unmerchantable as alleged herein;

    c.     Whether the "bonded leather" upholstered furniture is covered by Defendants' warranty;

    d.     Whether Defendants marketed and represented its bonded leather furniture as real or genuine leather;

    e.     Whether Defendants had actual or imputed knowledge of the defects alleged herein;

    f.     Whether Defendants' acts and omissions described herein constitute unfair and deceptive trade practices in violation of FDUTPA;

9

g. Whether the Class members suffered a loss as result of Defendants' violations of FDUTPA;

h. Whether the Class members are aggrieved by Defendants' violations of FDUPTA; and

i. What is the proper measure of damages for Defendants' violations of FDUTPA.

43. Plaintiff's claims are typical of the claims of the members of the Class and Plaintiff does not have any interests antagonistic to those of the members of the Class.

44. With respect to the claims asserted pursuant to Florida Rule of Civil Procedure 1.220(b)(3), the aforementioned common questions of fact and law exist as to all Class members and such questions predominate over any questions solely affecting any individual class member.

45. Plaintiff is committed to prosecuting this class action and has retained the undersigned attorneys who are qualified and experienced in handling class actions and other complex civil litigation, and will adequately protect the interests of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

46. With respect to Count II, Plaintiff and the Class seeking class-wide injunctive relief pursuant to Rule 1.220(b)(2) of the Florida Rules of Civil Procedure because Defendants have acted or refused to act on grounds generally applicable to all the members of the Class, thereby making final injunctive relief concerning the Class as a whole appropriate.

47. With respect to Counts I and III-VI, Plaintiff also brings this class action under Rule 1.220(b)(3) and/or (d)(4) of the Florida Rules of Civil Procedure on the grounds that the questions of law or fact common to Plaintiff's and Class members' claims predominate over any questions

solely affecting only individual Class members, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy; or alternatively, on the grounds that the Plaintiff's claims may be brought or maintained on behalf of the Class concerning particular issues.

48.     Finally, the prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

## COUNT I

### VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (DAMAGES ON BEHALF OF PLAINTIFF AND THE CLASS)

49.     Plaintiff, individually and on behalf of all those similarly situated, re-allege Paragraphs 1 through 48 above.

50.     This is a cause of action against Rooms To Go by Plaintiff, individually and on behalf of the Class, pursuant to Rule 1.220(b)(3) and/or (d)(4) of the Florida Rules of Civil Procedure, for damages under FDUTPA.

51.     FDUTPA expresses a primary policy "[t]o protect the consuming public...from those who engage in ... unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce" and that as a rule of construction, the FDUTPA statutes "shall be construed liberally to promote [such] policies... ."

11

52. Under Section 501.204(1), Florida Statutes, any and all "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are ... declared unlawful" under FDUTPA.

53. Rooms To Go's acts and omissions of marketing and representing "bonded leather" as actual or genuine leather; as well as, marketing, representing, and failing to honor its warranty, as described herein are unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, and are, therefore, unlawful under FDUTPA pursuant to Section 501.204(1).

54. Additionally, Rooms To Go's acts of marketing, representing, and selling a product named "bonded leather" is inherently unfair and deceptive as the term "bonded leather" is likely to mislead a reasonable consumer to conclude that "bonded leather" is actually a form of genuine leather furniture.

55. Rooms To Go sold defective and unmerchantable "bonded leather" furniture to Plaintiff and the members of the Class, and thereby placed them in the stream of commerce.

56. In a FDUTPA claim, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2015." § 501.204(2), Fla. Stat.

57. Independent of Section 501.204(1), the violation of any "law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" constitutes a *per se* violation of FDUTPA. § 501.203(3)(c), Fla. Stat.

58. Section 672.313, Florida Statutes, provides that a product sold pursuant to an express warranty must conform to its express terms.

12

59.    By virtue of its acts and omissions described herein, Rooms To Go sold products pursuant to an express warranty which did not conform to its express terms, and this constitutes a *per se* violation of FDUTPA under Section 501.203(3)(c) because Section 627.313 proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

60.    Section 672.314, Florida Statutes, provides that when any product is sold by a merchant who deals with products of that kind, there is an implied warranty that the product is "merchantable," *i.e.*. is of fair average quality and is fit for its ordinary purposes.

61.    By virtue of its acts and omissions described herein, Rooms To Go provided and violated an implied warranty of merchantability and/or fitness, and this constitutes a *per se* violation of FDUTPA under Section 501.203(3)(c) because Section 627.314 proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

62.    Section 672.316, Florida Statutes, provides that in order to exclude or modify the implied warranty of merchantability or any part of it, the language used must mention merchantability, and in case of a writing, must be conspicuous and, to exclude or modify any implied warranty of fitness, the exclusion must be by a writing and conspicuous.

63.    By virtue of its acts and omissions described herein concerning the "bonded leather" furniture, Rooms To Go did not lawfully exclude or modify the implied warranty of merchantability or any part of it, and did not lawfully exclude or modify any implied warranty of fitness, and Rooms To Go's failure and/or refusal to honor its implied warranty of merchantability and/or its implied warranty of fitness constitutes a *per se* violation of FDUTPA under Section 501.203(3)(c) because Section 627.316 proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

64. Due to its defective, unmerchantable, and/or unfit nature, the "bonded leather" furniture sold to Plaintiff and the Class members were worthless or otherwise priced in a manner that was unconscionable, deceptive, or unfair in violation of Section 501.203(3)(c).

65. Under Section 501.211(2), Florida Statutes, "In any action brought by a person who has suffered a loss as a result of a violation of [FDUTPA], such person may recover actual damages."

66. As a result of Rooms To Go's violations of FDUTPA, Plaintiffs and the Class have suffered a loss and incurred actual damages.

67. Plaintiff has retained the undersigned attorneys to prosecute this action, and are entitled to recover reasonable attorneys' fees and costs from Defendant pursuant to Sections 501.211(2) and 501.2105, Florida Statutes.

## COUNT II

## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (INJUNCTIVE RELIEF)

68. Plaintiff, individually and on behalf of all those similarly situated, re-allege Paragraphs 1 through 48 above.

69. This is a cause of action against Rooms To Go by Plaintiff, individually and on behalf of the Class, pursuant to Rule 1.220(b)(2) of the Florida Rules of Civil Procedure, for injunctive relief under FDUTPA.

70. As alleged above, Rooms To Go has engaged, and is engaging, in unconscionable, deceptive, or unfair acts or practices in violation of FDUTPA, on an ongoing and continuing basis.

71. "Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of [FDUTPA] may bring an action to … enjoin a person who has violated, is violating, or is otherwise likely to violate [FDUTPA]." *See* §501.211(1), Fla. Stat.

14

72.     Plaintiff and the Class are aggrieved by Rooms To Go's violations of FDUTPA.

73.     By virtue of the unconscionable, deceptive, or unfair acts or practices alleged herein, Rooms To Go has violated, is violating, or is otherwise likely to violate FDUTPA.

74.     Irreparable injury to Plaintiff and the Class is presumed or need not be demonstrated to obtain injunctive relief pursuant to Section 501.211(1). In the alternative, irreparable harm to Plaintiff and the Class, as well as the consuming public at large, has occurred and/or will continue to occur if Rooms To Go is not enjoined from continuing to engage in the unconscionable, deceptive, or unfair acts or practices alleged herein.

75.     An inadequate remedy at law is either presumed or need not be demonstrated to obtain injunctive relief pursuant to Section 501.211(1). In the alternative, Plaintiff and the Class have no adequate remedy at law if Rooms To Go is not enjoined from continuing to engage in the unconscionable, deceptive, or unfair acts or practices alleged herein.

76.     Plaintiff and the Class have a clear right to injunctive relief pursuant to Section 501.211(1).

77.     Granting injunctive relief to Plaintiff and the Class pursuant to Section 501.211(1) will serve the public interest.

78.     Plaintiff has retained the undersigned attorneys to prosecute this action, and are entitled to recover reasonable attorneys' fees and costs from Rooms To Go pursuant to Section 501.2105, Florida Statutes.

## COUNT III

### BREACH OF CONTRACT

79.     Plaintiffs, individually and on behalf of all those similarly situated, re-allege Paragraphs 1 through 48 above.

80.     This is a cause of action against Rooms To Go by Plaintiff, individually and on behalf of the Class, pursuant to Rule 1.220(b)(3) and/or (d)(4) of the Florida Rules of Civil Procedure, for breach of contract.

81.     Pursuant to the Sales Contract, Plaintiff and Rooms To Go entered into a contract for the purchase of Plaintiff's "bonded leather" furniture. *See* Exh. A. The terms of the express warranty that applied to the contracts are contained in that agreement.

82.     The members of the Class entered into identical Sales Contracts with Rooms To Go involving identical express warranties when they purchased the defective "bonded leather" upholstered furniture.

83.     Rooms To Go breached the terms of its contracts with Plaintiff and the members of the Class by its acts or omissions, which include without limitation:

a.      Rooms To Go sold "bonded leather" furniture that was worthless or overpriced, defective, not merchantable, not of fair average quality, not fit for their ordinary purposes, and did not comply with the implied warranty of merchantability and/or fitness.

b.      Rooms To Go sold "bonded leather" furniture that was worthless or overpriced, defective, well known to peel, flake, and deteriorate rapidly, and concealed the defective nature of the furniture from its customers.

c.      Rooms To Go performed inadequate repairs to the "bonded leather" furniture with "bonded leather" that were similarly defective, also peeling, flaking, and otherwise deteriorating rapidly, and failed to disclose such known defects to its customers.

d.      Rooms To Go breached its warranty by failing and refusing to repair, replace, or refund their full purchase price.

16

84.     By breaching its contracts with Plaintiff and the members of the Class, Rooms To Go has caused damages to Plaintiff and the members of the Class.

85.     Plaintiff and the members of the Class are entitled to attorneys' fees under the terms of the Sales Contracts and Section 57.105(7) of the Florida Statutes.

**COUNT IV**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AND/OR FITNESS**

86.     Plaintiff, individually and on behalf of all those similarly situated, re-allege Paragraphs 1 through 48 above.

87.     This is a cause of action against Rooms To Go by Plaintiff, individually and on behalf of the Class, pursuant to Rule 1.220(b)(3) and/or (d)(4) of the Florida Rules of Civil Procedure, for breach of the implied warranty of merchantability and/or fitness.

88.     A warranty that a product is merchantable is implied in a contract for its sale if the seller is a merchant with respect to goods of that kind. A product is merchantable if it is of fair average quality or is fit for the ordinary purposes for which it is used.

89.     To exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of a writing must be conspicuous.

90.     To exclude or modify any implied warranty of fitness, the exclusion must be by a writing and conspicuous.

91.     Rooms To Go is a merchant with respect to the sale of defective "bonded leather" furniture as discussed herein.

92.     Rooms To Go sold defective "bonded leather" furniture to Plaintiffs and the members of the Class. Consequently, Plaintiff and the members of the Class were foreseeable users of that furniture.

17

93.     At all times material, the "bonded leather" furniture sold to Plaintiff and the members of the Class were defective and not merchantable because, among other things, they were not of fair average quality, was not fit for its ordinary purpose for which it is used (*i.e.*, living room furniture), and was not suitable for sale to Florida consumers.

94.     Because of the peeling, flaking, and rapid deterioration of the defective "bonded leather" furniture, and Rooms To Go's subsequent failure to replace it or offer Plaintiff or the members of the Class in-store credits for the original purchase price, Plaintiff and the members of the Class have incurred damages.

## COUNT V

## UNJUST ENRICHMENT

95.     Plaintiffs, individually and on behalf of all those similarly situated, re-allege Paragraphs 1 through 48 above.

96.     This is a cause of action against Rooms To Go by Plaintiff, individually and on behalf of the Class, pursuant to Rule 1.220(b)(3) and/or (d)(4) of the Florida Rules of Civil Procedure, for unjust enrichment.

97.     Rooms To Go committed the following acts in connection with its sale of defective "bonded leather" Furniture to Plaintiff and the Class, without limitation:

a.     Rooms To Go sold "bonded leather" Furniture that was worthless or overpriced, defective, not of fair average quality, and not fit for their ordinary purposes, and did not comply with the implied warranty of merchantability.

b.     Rooms To Go sold "bonded leather" Furniture that was worthless or overpriced, defective, and well known to peel, flake, and deteriorate rapidly, and concealed the defective nature of the furniture from its customers.

c. Rooms To Go purported to repair the "bonded leather" furniture with "bonded leather" parts that were similarly defective, also peeling, flaking, and otherwise deteriorating rapidly, and failed to disclose such known defects to its customers.

98. Rooms To Go failed to honor the terms of its warranty by failing to repair, replace, or refund their full purchase price of the defective "bonded leather" furniture.

99. Rooms To Go has knowledge of the benefits that Plaintiff and the members of the Class have conferred on it in the form of payments for the defective "bonded leather" furniture have accepted the benefits of those payments.

100. Under these circumstances, it would be inequitable for Rooms To Go to enjoy the benefits of the amounts that Plaintiff and the members of the Class paid to it.

101. As a direct and proximate result of Rooms To Go's conduct, Plaintiff and the members of the Class have suffered and will continue to suffer damages, including those described above.

102. Therefore, Rooms To Go should be required to reimburse to Plaintiff and the members of the Class any amounts they received from the sale of the defective "bonded leather" furniture.

103. Plaintiff and the members of the Class are entitled to attorneys' fees under the terms of the Sales Contracts and § 57.105(7) of the Florida Statutes.

## COUNT VI

## COMMON LAW RESTITUTION

104. Plaintiff, individually and on behalf of all those similarly situated, re-allege Paragraphs 1 through 48 above.

19

105.  This is a cause of action against Rooms To Go by Plaintiff, individually and on behalf of the Class, pursuant to Rule 1.220(b)(3) and/or (d)(4) of the Florida Rules of Civil Procedure, for common law restitution.

106.  Through its unlawful actions, and continuing pattern of deceptive and unfair business practices, Rooms To Go violated Florida's public policy that protects all consumers from such conduct.

107.  Rooms To Go has also violated multiple Florida Statutes, including Sections 501.203, 501.204(1), 672.313, 627.314, and/or 627.316, Florida Statutes, which also represent Florida's public policy.

108.  Plaintiff and the Class are innocent parties to the transactions, which are the subject of this consumer class action.

109.  As a result of Rooms To Go's violations of public policy and Florida Statutes, all Sales Contracts entered into between Rooms To Go and Plaintiff and the Class concerning the "bonded leather" furniture are void *ab initio* and unenforceable under Florida's century-old illegality doctrine.

110.  Rooms To Go received payments made by Plaintiff and the Class pursuant to illegal and void Sales Contracts at issue that resulted from Rooms To Go's violations of public policy and Florida Statutes.

111.  Rooms To Go is required to disgorge and make full restitution to Plaintiff and the Class of all sums of money paid to them pursuant to the illegal and unenforceable agreements, with no set-offs.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of all those similarly situated, request the following relief:

a.    under Count I (FDUPTA Damages), a judgment against Defendants jointly and severally for actual damages, costs, interest, and attorneys' fees pursuant to §§ 501.211(2) and/or 501.2105 of the Florida Statutes;

b.    under Count II (FDUPTA Injunctive Relief), a judgment against Defendants jointly and severally for injunctive relief, costs, interest, and attorneys' fees pursuant to §§ 501.211(2) and/or 501.2105 of the Florida Statutes;

c.    under Count III (Breach of Contract), a judgment against Defendants jointly and severally for damages, costs, interest, and attorneys' fees under the Sales Agreements pursuant to § 57.105(7) of the Florida Statutes;

d.    under Count IV (Breach of Implied Warranty of Merchantability), a judgment against Defendants jointly and severally for damages, attorneys' fees to the extent permitted by law, along with interest and costs;

e.    under Count V (Unjust Enrichment), a judgment against Defendants jointly and severally for damages, attorneys' fees to the extent permitted by law, along with interest and costs;

f.    under Count VI (Common Law Restitution), a judgment against Defendants jointly and severally for damages, attorneys' fees to the extent permitted by law, along with interest and costs;

g.    an Order that this action may be properly maintained as a class action under Rule 1.220(b)(2) and/or (b)(3) and/or (d)(4) of the Florida Rules of Civil Procedure, appointing Plaintiff

as the Class Representative and the undersigned attorneys Class Counsel to represent the Class, and requiring Defendants to provide and pay for reasonable and adequate notice to be given to prospective members of the Class following certification; and

h.      any additional relief necessary to protect the rights and interests of Plaintiff and the Class.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, demand a trial by jury.

Dated: June 1, 2017

**[Attorney's signature appears on the following page.]**

Respectfully submitted,

Christopher S. Polaszek (FBN 0116866)
**THE POLASZEK LAW FIRM PLLC**
3407 W. Kennedy Blvd.
Tampa, FL 33609
Telephone:  (813) 574-7678
Primary email:  chris@polaszeklaw.com

J. Daniel Clark  (FBN 0106471)
**CLARK & MARTINO, P.A.**
3407 W. Kennedy Boulevard
Tampa, FL 33609
(813) 879-0700
(813) 879-5498 (Facsimile)
Primary email:  dclark@clarkmartino.com
Secondary email: rsmith@clarkmartino.com

Eric Seidel      (FBN 903205)
**MCINTYRE, THANASIDES BRINGGOLD
   ELLIOTT GRIMALDI & GUITO, P.A.**
500 E. Kennedy Blvd., Suite 200
Tampa, FL  33602
(813) 230-4947
(83) 899-6069 (Facsimile)
Primary email:  eric@mcintyrefirm.com

**Counsel for the Plaintiff**