# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ROBERT BLOBNER, on behalf of himself and
all similarly situated individuals,

     Plaintiff,

v.                                                                        CASE NO:  8:17-cv-1676-T-30SPF

R.T.G FURNITURE CORP.,

     Defendant.

_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion for Class Certification (Dkt. 104), Defendant's Response in Opposition (Dkt. 118), Plaintiff's Reply (Dkt. 127), Plaintiff's Motion to Exclude Declarations Filed in Opposition to Class Certification (Dkt. 126), and Defendant's Response in Opposition to the Motion to Exclude (Dkt. 133).  The Court, having reviewed the motions, responses, reply, record evidence, and being otherwise advised in the premises, concludes that Plaintiff's motions should be denied.[1]  Specifically, Plaintiff has not met his burden to establish that a class action is appropriate in this case. Because the Court's ruling appears to deprive the Court of subject matter jurisdiction over Plaintiff's individual state law claims, the parties shall file supplemental briefs on whether dismissal for lack of jurisdiction is necessary.

---

[1] The Court notes that a number of the filings are under seal—the Court reviewed these filings as well.

## BACKGROUND

Plaintiff Robert Blobner filed this action as a purported class action lawsuit for deceptive and unfair business practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Blobner also included a related claim of unjust enrichment. Blobner seeks to represent a class of consumers that purchased bonded leather ("BL") furniture ("a synthetic and primarily polyurethane material containing only bits of pulverized and recycled leather particles") (hereinafter referred to as "BLF") from Defendant R.T.G. Furniture Corp. ("RTG"). Blobner alleges that RTG had a history of selling defective bonded leather furniture to Florida consumers despite being aware of significant complaints about the furniture's inherent problems of peeling, flaking, and delamination. Blobner claims that RTG knew that the furniture was not suitable for sale to Florida consumers living in a "hot and humid" environment.

The parties engaged in extensive discovery to date. The Court pauses to compliment the parties on their filings, which are extremely well-written. Pursuant to the thorough discovery, the record reflects the following salient facts.[2] RTG does not make bonded leather or BLF. RTG purchases finished BLF products from vendors and resells them. The

---

[2] Blobner moves to strike RTG's declarations filed in opposition to his motion for class certification. The motion to strike is denied for the reasons stated in RTG's response (Dkt. 133). To summarize, the Court need not rely on the declarations to conclude that class certification is inappropriate here. Also, the evidence RTG relies upon is not inadmissible at this stage. RTG summarized its business records, which were produced to Blobner in this case. Finally, Blobner's argument that RTG's data is inaccurate or incomplete is curious because Blobner never moved to compel more data. Nor has Blobner filed any type of discovery motion challenging RTG's discovery responses/production to date.

manufacturers of bonded leather utilize different fabric mills and leather tanneries.  The record reflects that thousands of factories in China manufacture bonded leather.  There is no evidence that these manufacturers used the same manufacturing processes or materials to make bonded leather.

RTG assigns each product it sells a unique Stock-Keeping Unit number, or "SKU."  On June 13, 2013, Blobner purchased a sofa, SKU 19195610, and chaise, SKU 19295612.  The vendor was United Furniture.  Blobner claims the bonded leather on those items failed within weeks.  Blobner seeks to certify the following Class: **"All persons who purchased any Bonded Leather Furniture from Rooms to Go since June 1, 2013."**  (Dkt. 104).

The record reflects that during the proposed class period, RTG shipped 264,499 units of BLF (across 475 different SKUs).  The record contains complaints from fewer than 1% of purchasers of these units within the one-year warranty period, and fewer than 7% complained at any time.  For the approximate 244,743 units of BLF about which the record reflects no complaints, there is no evidence that the bonded leather is defective.

With respect to the specific two items that Blobner purchased, the record reflects that, when Blobner made his purchase, (1) at least 2,028 units of SKU 19195610 and 2,039 units of SKU 19295612 had been shipped, and (2) RTG received complaints about the bonded leather on 5 units of the former and 6 units of the latter.

RTG opposes Blobner's motion for class certification for various reasons.  RTG argues that Blobner lacks standing to assert claims relating to products he did not purchase.  RTG also argues that the proposed class does not otherwise meet the Rule 23 requirements.

The Court agrees with RTG as explained below in more detail. Because standing is a threshold issue, the Court will address this argument first and then briefly discuss the remaining arguments.

## **DISCUSSION**

### I.   **Blobner's Standing**

Standing is a threshold jurisdictional question. To establish standing a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Because Blobner's standing relates to his legal claims, the Court briefly discusses the elements of claims for FDUTPA and unjust enrichment.

A FDUTPA claim requires (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages. *Dolphin LLC v. WCI Cmty., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA. 2006). An unfair trade practice is one that is likely to deceive a consumer acting reasonably in the same circumstances. *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983-84 (11th Cir. 2016) (applying Florida law). This is an objective test—a plaintiff need not show actual reliance on the representation or omission at issue. *Id.*

Blobner's unjust enrichment claim is related to the FDUTPA claim. Blobner must show that: (1) he conferred a benefit to RTG; (2) RTG voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for RTG to retain the

-4-

benefit without paying the value thereof. *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004) (quoting *Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc.*, 668 So. 2d 205, 207 (Fla. 2d DCA 1995)).

The crux of RTG's standing argument is that Blobner lacks standing to assert claims related to products he did not purchase. The record reflects that RTG sold hundreds of different products upholstered with bonded leather made by numerous companies. It is axiomatic that Blobner suffered no injury from products he did not buy. RTG points the Court to at least 14 Florida district court decisions holding that class representatives have standing as to only the products they purchased. These decisions involve allegations that a product was defective or the subject of omissions or misrepresentations. Indeed, contrary to Blobner's argument that RTG is treating this case like a product liability case, many of these cases involved similar FDUTPA and unjust enrichment claims based on purported deceptive representations.

The district court in *Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, 347 F. Supp. 3d 1207, 1219–21 (S.D. Fla. 2018), aptly discussed the relevant case law on standing:

> Many courts in this district have examined this exact issue in great depth and concluded that the plaintiffs did not have standing to bring claims for products that they did not purchase. In *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013), the plaintiff filed a FDUTPA class action complaint seeking damages and injunctive relief and alleged that the defendant's "TriFlex" line of products did not actually promote joint health and function as advertised. *Toback*, No. 13-80526-CIV, 2013 WL 5206103 at *1. However, the plaintiff had only purchased one "TriFlex" product, "TriFlex Vitapak." *Id.* In holding that the plaintiff only had standing to bring claims related to "TriFlex

-5-

Vitapak," the court explained that in the Eleventh Circuit "at least one named plaintiff must establish Article III standing for each class subclaim." *Id.* at *4 (citing *Prado–Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). Accordingly, the Toback court reasoned that: The Article III standing analysis requires a plaintiff to demonstrate that he has suffered an injury-in-fact. Because Plaintiff alleges that he purchased the TriFlex Vitapak, but not other TriFlex products, he has failed to plead that he suffered any injury with regard to products other than the TriFlex Vitapak ... [and] therefore cannot establish his Article III standing with respect to any product other than the Vitapak." *Id.* (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130).

One year later, the court in *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1390 (S.D. Fla. 2014) took up the same issue and, relying partially on *Toback*, reached the same result. In *Garcia*, the plaintiffs brought a class action against a food manufacturer alleging breach of express and implied warranties because its products allegedly contained certain chemicals despite being marketed and labeled as "all natural." *Id.* The plaintiffs sought to certify a class of all purchasers of defendants' products that contained these chemicals. *Id.* However, like the plaintiff in *Toback*, the plaintiffs in *Garcia* had only purchased a small number of these products. *Id.* Relying partially on *Toback*, the *Garcia* court held that the plaintiffs only had standing as to those products they had actually purchased: "[A] named plaintiff in a consumer class action lacks standing to challenge a non-purchased product because there is no injury-in-fact as to that product, even if he purchased a substantially similar product ... The Court agrees with *Toback* that, in the Eleventh Circuit, a named plaintiff in a consumer class action 'cannot raise claims relating to those other products which he did not purchase[.]'" *Id.* at 1393-94 (quoting *Toback*, 2013 WL 5206103 at *5).

The *Garcia* court further noted that this holding was in line with both Eleventh Circuit and Supreme Court precedent: "[J]ust as a plaintiff cannot pursue an individual claim unless he proves standing, a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1288 (11th Cir. 2001).
This individual injury requirement is not met by alleging that injury has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which [he] purport[s] to represent.
*Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir.1987) (alteration in original) (quotation omitted).

It is not enough that the conduct of which the plaintiff complains will injure someone. The complaining party must also show that he is within the class of persons who will be concretely affected. Nor does a plaintiff who has been subject to injurious conduct

of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.
*Blum v. Yaretsky*, 457 U.S. 991, 999, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). Multiple other courts in this Circuit have since followed suit. *See, e.g., Barron v. Snyder's-Lance, Inc.*, No. 13-62496-CIV, 2015 WL 11182066, at *17 (S.D. Fla. Mar. 20, 2015) ("The Court reaffirms the position it took in *Garcia*: "a named plaintiff in a consumer class action 'cannot raise claims relating to those other products which he did not purchase[.]'") (quoting *Garcia*, 43 F. Supp. 3d 1359); *Holliday v. Albion Labs., Inc.*, No. 9:14-CV-81294, 2015 WL 10857479, at *5 (S.D. Fla. June 9, 2015) (finding plaintiff lacked Article III standing to bring FDUTPA claim as to products he did not purchase and limiting standing to two purchased products).

The Court agrees with this reasoning and concludes that Blobner lacks standing as to any product he did not purchase. This standing defect is fatal to Blobner's proposed class. Nonetheless, the Court will discuss why Blobner's proposed class fails to meet other Rule 23 requirements.

## II.    Blobner's Motion for Rule 23 Class Certification

### A.    Standard of Review

A district court is vested with broad discretion in determining whether to certify a class. *See Washington v. Brown & Williamson Tobacco Corp*., 959 F.2d 1566, 1569 (11th Cir. 1992). However, the Court may certify this case as a class action only if Blobner has met the implicit and explicit requirements of Rule 23 of the Federal Rules of Civil Procedure. *See Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551-52 (2011); *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1267 (11th Cir. 2009).

As a threshold issue, Blobner must demonstrate that the proposed class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Assuming the class is ascertainable, Blobner must then prove that there are "*in*

*fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation as required by Rule 23(a)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (emphasis in original). Blobner must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b). *See id.* Only after a "rigorous analysis" may a court determine that the movant has satisfied Rule 23's prerequisites and properly certify the class.[3] *See id.*

### B.     "Adequately Defined and Clearly Ascertainable"

The Eleventh Circuit instructs that "a class is not ascertainable unless the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharm., Inc.*, 621 Fed.Appx. 945, 946 (11th Cir. 2015) (citing *Bussey v. Macon Cnty. Greyhound Park, Inc.,* 562 Fed.Appx. 782, 787 (11th Cir. 2014)). Identifying class members is administratively feasible when it is a "manageable process that does not require much, if any, individual inquiry." *Id.* (internal quotation marks omitted).

Here, the Court concludes that Blobner's proposed class is not adequately defined because, setting aside the fact that it includes products Blobner did not purchase, it inappropriately includes putative class members who have no valid FDUTPA or unjust enrichment claims against RTG. *See Perisic v. Ashley Furniture Indus., Inc.*, No. 8:16-CV-3255-T-17MAP, 2018 WL 3391359, at *3 (M.D. Fla. June 27, 2018), report and

---

[3] Because the Court's analysis is "rigorous," Blobner's argument that RTG already conceded certain matters is without merit.

recommendation adopted, No. 8:16-CV-3255-EAK-SPF, 2018 WL 4381184 (M.D. Fla. Aug. 13, 2018) (noting same); *see also Walewski v. Zenimax Media, Inc.*, 502 F. App'x. 857, 861 (11th Cir. 2012) (affirming the district court's decision that the class was not adequately defined or clearly ascertainable because the class definition "impermissibly include[d] members who had no cause of action as a matter of law."); *Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC*, No. 15-24375-CIV-Altonaga, 2016 WL 8542540, \*5-\*6 (S.D. Fla. Dec. 1, 2016) (denying class certification for the plaintiff's FDUTPA claim because the proposed class was overbroad as it included members who may not have FDUTPA claims).

Finally, as RTG points out in its response, Blobner's proposed class includes purchasers who entered into an arbitration agreement containing a class action waiver.

In sum, in addition to lacking standing for the proposed class, Blobner has not met his burden to establish that the proposed class is adequately defined.

### C.     Requirements under Rule 23(a)

The four elements required for class certification under Rule 23(a) are: (1) numerosity, the class is so numerous that joinder of all members is impracticable; (2) commonality, there are questions of law or fact common to the class; (3) typicality, the claims or defenses of the class are typical; and (4) adequacy, the class representative will fairly and adequately protect the interests of the class. *Luna*, 2009 WL 4366953, at \*1 (citing Fed.R.Civ.P. 23(a)); *Hines v. Widnall,* 334 F.3d 1253, 1255-56 (11th Cir. 2003); *Franze v. Equitable Assurance,* 296 F.3d 1250, 1253 (11th Cir. 2002).   The  Court  limits its analysis to commonality and typicality—these elements are not established here.

**Common Questions of Law and Fact**

The commonality requirement typically "refers to the group of characteristics of the class." *Prado-Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000). To satisfy the commonality requirement, "a class action must involve issues that are susceptible to class wide proof." *Cooper v. Southern. Co.,* 390 F.3d 695, 714 (11th Cir. 2004), *overruled on other grounds*, (quoting *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001)). However, it is not necessary that all members of the class have identical claims. *See Prado-Steiman,* 221 F.3d at 1279 n.14. Commonality, like typicality, focuses "on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members." *Id.* at 1278.

The Court concludes that a sufficient nexus does not exist here because Blobner assumes that if the bonded leather on his products failed, any other product containing bonded leather during the class period failed as well. The record does not support this assumption.

**Typicality**

Typicality requires that a class representative "possess the same interest and suffer the same injury as the class members." *Cooper,* 390 F.3d at 713. Thus, "the typicality requirement is satisfied if 'the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory.'" *Agan,* 222 F.R.D. at 698 (quoting *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984)). Even if the fact patterns are unique to each claim, the typicality requirement will

-10-

be satisfied if the class representative and class members experienced the same unlawful conduct.  *See Agan,* 222 F.R.D. at 698.

The record is insufficient to establish that Blobner and the class members experienced the same unlawful conduct.  There is insufficient evidence of a common defect.  The evidence is also lacking to the extent Blobner claims that RTG made misrepresentations to the proposed class about the quality of its BLF.  So this element is not met.

### D.      Requirements under Rule 23(b)

As stated above, in order to have a class certified, the representative plaintiff must not only satisfy Rule 23(a), but must also show that he meets one of the alternative requirements of Rule 23(b).  Blobner's motion indicates that the claims satisfy the requirements for certification under Rule 23(b)(3).

For class certification to be appropriate under Rule 23(b)(3), common questions must predominate over questions that affect only individual members and the class action must be a superior method for a "fair and efficient adjudication of the controversy."  *Cooper,* 390 F.3d at 722 (citing Fed.R.Civ.P. 23(b)(3)).  Thus, Rule 23(b)(3) imposes two additional requirements to Rule 23(a): predominance and increased efficiency (superiority).  *See id.* (citing *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1006 (11th Cir. 1997)).  The Court limits its analysis to predominance, which is lacking here.

The issues raised in the class action that are subject to generalized proof and that are applicable to the class as a whole "must predominate over those issues that are subject only to individualized proof."  *Babineau,* 576 F.3d at 1191 (quoting *Kerr,* 875 F.2d at 1558).

-11-

"Common issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" *Id.* at 1191 (quoting *Andrews v. Am. Tel. & Tel. Co.,* 95 F.3d 1014,1023 (11th Cir. 1996)).  A class should not be certified if it appears that most of the plaintiff's claims have highly case-specific factual issues.  *See id.*  The predominance requirement is "far more demanding" than the commonality requirement. *Jackson,* 130 F.3d at 1005.

RTG's opposition on this point is persuasive to the extent that RTG argues: (1) whether it engaged in a deceptive act or unfair practice turns on individualized proof; (2) causation turns on individualized proof; and (3) the issue of damages turns on individualized proof.  RTG's arguments are relevant to the FDUTPA and unjust enrichment claims.

With respect to the alleged deception about RTG's BLF, because there is no evidence of a common design or defect in every item that was sold, Blobner would need to submit individualized evidence about each purchased item.  As RTG contends, "this is not a case where uniform facts determine whether [RTG] engaged in a deceptive or unfair act.  It is not, for example, a case in which a defendant uniformly labels a product as 'all natural,' but uniformly uses non-natural ingredients."

With respect to causation, the record reflects that the cracking, peeling, or delamination about which some purchasers of BLF complained could have resulted from customer use.  Indeed, the cause could be from a slew of factors related to use—normal wear, improper cleaning, children, and/or pets.  So causation is heavily individualized.

-12-

Finally, with respect to damages, Blobner failed to establish how any damages associated with the allegedly defective BLF could be determined on a class-wide basis. There is no record evidence that the BLF was valueless or worthless. The record instead reflects that purchasers used their BLF to some extent, generally for years. So there was some value attributed to the BLF. And, it is worth repeating that Blobner's proposed class would naturally include purchasers (a vast majority) who suffered no damages.

The damages inquiry is also complicated by RTG's practice of offering credits to those purchasers who complained about their items even after the one-year warranty period. The credit could be used toward new furniture and was not restricted to BLF. The record reflects that 76% of purchasers (during the proposed class period) who complained about BLF after the warranty period expired accepted credit offers. So additional individual issues exist for them.

In sum, the Court must deny Blobner's motion for class certification for the reasons discussed herein. The Court notes that its denial of Blobner's motion for class certification has resulted in the absence of CAFA subject matter jurisdiction under 28 U.S.C. § 1332(d). Because no alternative basis for this Court's subject matter jurisdiction exists, the parties shall file briefs that shall not exceed ten pages within fourteen days of this Order, explaining the basis of the Court's jurisdiction.

Accordingly, it is hereby **ORDERED and ADJUDGED** that:

1.      Plaintiff's Motion for Class Certification (Dkt. 104) and Plaintiff's Motion to

        Exclude Declarations Filed in Opposition to Class Certification (Dkt. 126) are

        denied.

2.      Within fourteen (14) days of this Order, the parties shall file briefs that shall

        not exceed ten (10) pages in length, explaining the basis for the Court's subject

        matter jurisdiction.

**DONE** and **ORDERED** in Tampa, Florida on July 24, 2019.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

-14-